Good morning everyone, argued case this morning is number 2011-3162, Doe against the United States Postal Service, Mr. McLaughlin. Thank you, Your Honor. Devin McLaughlin for Petitioner Terry Doe, who is here in the courtroom with his brother traveling down from Vermont.  Mr. Doe, as indicated, is a 24-year veteran of the Postal Service, was removed from his position. It is our position, Your Honors, that there was not substantial evidence to support Judge Stevenson's finding that Mr. Doe, Terry, punched Mr. Goode, which is obviously what the dispute was. Recognizing the standard of review makes it a relatively uphill battle, I did want to start with the comment that it's a relatively unique fact pattern. I don't know whether Your Honors have run into it, I certainly haven't run into a contention that the supervisor took a dive as opposed to being punched. And the significance of that is that facts that would otherwise appear to be supportive of a punch in the context of something that's frankly the other side of the coin, which is a dive, you would think that they would go and support finding that there was a punch when in fact they are more consistent with Mr. Doe's version, which is that Mr. Goode took a dive. If we were to credit that he took a dive, wouldn't we also have to assume that there was some sort of a setup, some sort of a plan to put Mr. Doe in a difficult position and prove his charade, as you call it? Absolutely, Your Honor. Without a motive, and Judge Stevenson says there is no motive and I do want to address that, without a motive it makes no sense. Unless there's a motive by Mr. Goode to set up Terry, then who would go ahead and take a dive? The evidence we submit, Your Honors, there was a lot of evidence on a motive for why Mr. Goode would go ahead and do this. As Judge Stevenson herself found, the animus between union efforts and Mr. Goode had risen to the level where there was something like 198 or 168 grievances filed over a very short period of time. So there was a lot of hostility between union and Mr. Goode. A lot of that hostility was directed towards Terry and the witnesses went ahead and testified to that. But how are we to assess these facts? Given the standard of review, this is not as if we are here to hear the case anew and to reach a decision we would have reached if we were the triers of fact in the first instance. We're reviewing the record and we're reviewing the record for substantial evidence. Absolutely, Your Honor, and I recognize you are not in a position of being the original fact finder or 13th juror or anything like that. Your precedent does talk about canvassing the record. It does talk in Dixon and other ones about, in canvassing the record, we look both at evidence on this side and we're also going to look at evidence that detracts from it. And what you're doing is reviewing Judge Stevenson's opinion and is there substantial evidence. And when you have an opinion that has factual errors on its face, blatant factual errors that she principally relied on, then this, of course, scrutiny needs to be a little bit more close. What errors are you principally focusing on? I start with, Your Honor, because it's in the crux of her opinion, she goes through different testimonies from different folks and then she gets to the crux of her opinion, which is on page 11 of her opinion. She's struggling with what am I going to do with different versions of events. And then she tries to go to, okay, I'll go to objective evidence to try to figure out who's telling the truth here. And objective evidence, she goes ahead and talks about, given the fact that several witnesses saw a bruise on Goode's face shortly after hearing him. That is plain, I respectfully submit, is plain wrong. There was no testimony that Mr. Goode had a bruising. Bruising, he said he got punched right up here at the top of his nose. Nobody saw that. The only mark anybody ever saw was a red cheek. And Mr. Lemna was the one who went ahead and testified about a red cheek. Well, frankly, a red cheek is more consistent with the fact he took a dive and was lying, sorry, on his right side. It's more consistent with that than the fact, again, there's zero bruising where Mr. Goode said that he was hit. Tell us a little bit about the response that was filed late and your point about... The procedural argument, Your Honor? The procedural argument, yes. Thank you. The procedural argument, it's undisputed by the government that Postmaster Burleson decided to ignore the letter he received in response to the proposed notice of removal. I have gone ahead and quoted to, excerpted to the court the notice of proposed removal. And in terms of, he has 10 days to go ahead and respond. And on page 28 of my brief, I quoted verbatim and in its entirety where it talks about, you may answer this proposal within 10 days from your receipt of this letter, either in person or in writing or both, to Ricky Burleson. And then it gives his mailing address. I will point out, and it's up to Your Honor to ask the government, the government in their brief and excerpting that piece put ellipses as where the mailing address is. So the question is, could that reasonably interpret it to mean I can put it in the mail within 10 days? There's nothing here that says it has to be received within 10 days. I think, frankly, the most natural reading, because there's a postal address, that posting it would be sufficient. At worst, it's ambiguous. So then the question becomes... It does say, you may answer within 10 days. Correct. And then it goes on to say, after the expiration of 10 days, all facts, et cetera, et cetera. That does suggest to me, anyway, that 10 days is the date on which the response was anticipated being received. Your Honor, I would submit, and obviously, well, you folks are the jurists. If reasonable jurists can end up disagreeing on it, and I'm the lawyer, I'm not the jurist. You guys are the jurists. In terms of if reasonable jurists can disagree on the reading of this, then at worst case for us, we assert that it's ambiguous. And the question becomes, where does that ambiguity fall? Where do the consequences of that ambiguity fall? And we pointed, Your Honor, to the fact that under multiple principles of law, that should end up falling on the postmaster. The reality is that he should have gone ahead and considered it. He went ahead and received it. He says, no, technically it fell outside, so I'm not going to receive it. But we pointed, Your Honor, to the fact that, you know, whether it's as the drafter they should be responsible for ambiguity or whether it's consistent with due process principles that an employer – obviously, this is an incredibly important right for Mr. Doe, 24 years of postal service, to exploit an ambiguous deadline into forfeiture. Do we have any idea what the practice of the post office is? I can't speak to that, Your Honor. I don't know. And I guess I would also submit that – They're applicable regulations, and I think it's apparent what they wrote to you. I mean, the regulations which are in the ELM, the Employee Labor Management Manual of the Post Office at 65174, simply says you may respond within 10 days from receipt. It's no more clear in terms of whether or not it has to be in person or how it gets there, whether the mails can be used. Thank you, Your Honor. So that is actually somewhat consistent with the way it's written here, which, again, I would submit is ambiguous in terms of which way it should go. The government argues – time out. All we need to do is give them an opportunity. Under a ladder mail, we just need to give them a reasonable opportunity. And this did give them an opportunity, according to the government, because they had nine days to submit – no, they had 10 days to submit. And the response was actually composed on a Sunday, May 7th, Super Bowl Sunday. Yeah, so he went out of his way to go ahead and try to go ahead and get it in. Your Honor. How do we know that it was posted in the mail on Sunday? We know, Your Honor – Dated the 7th. How do we know that it was actually posted on that day? All that we have is the – I understand the question, Your Honor. All we have is the record evidence, and the record evidence – For example, would you argue that a letter that was dated 10 days, which is the 7th, which is exactly the 10th day, a letter that was dated the 7th but wasn't received until the 25th, would that be timely? I would concede, Your Honor, that the date on the letter is not this significant. You can go ahead and write a letter and keep it in your pocket for five days if you don't put it in the mail. So the significant event is the mailing? The significant event has to be the mailing. But you don't argue – you didn't really argue that you're entitled to the celebrated mailbox rule, the rule of common law that came mainly out of contract law. What I would start with, Your Honor, is that the record evidence, which is – Postmaster Burleson admitted that the February 7th letter, at least the way I read it, made an admission that that was 10 days after receipt by Mr. Doe. So on Appendix 120, that's Mr. Burleson's testimony, and then the letter itself talks about – That's the 10th day, yeah. But I say you hinge on the fact that you put it in the mail on the 10th day. You can also count – and obviously the government didn't raise this, but I was trying to do the counting this morning, Your Honor, which is that the other mailbox rule that we use is that you don't start counting until the next day. I mean, typically, at least in the legal world, if something's done – if you receive something on the 29th, if there's a filing on the 29th and you have 10 days, you don't start until the 30th. That 30th is day one. And so here – You presented this argument in your appeal to the full board, I believe. I didn't see any evidence in A.J.'s decision that the question of the timeliness of the February 7th letter had been put in issue. Correct. My understanding of the way that this was raised was that it was not litigated in front of Judge Stevenson, but rather it was presented as a procedural error to the full board, yes. And so regardless of whether – even if you take the 10 days – And there hasn't been any – there hasn't been any fact-finding. I mean, for example, I was wondering whether or not the mailbox rule would apply, and if it didn't apply, I wondered if this is a contractual situation where you would have contra-preferendum – Sure. So in terms of answering that, Your Honor – Suggesting that this is a potential procedural error that warrants a remand for a hearing on the question of how the board reached the conclusion that this was timely. The board had to agree with the government. Well, at a minimum, Your Honor, we would be requesting that. I would point out what the record – I'm not sure that it's necessary for two reasons. One is that, again, Postmaster Burleson, understanding it wasn't a litigated issue, said in his testimony, yes, that was 10 days. In terms of the penalty that was doled out to your client, in connection with the penalty, you argue that there was a May 20 episode – I think I'll call it the shirt episode – Sure, yeah. That the deciding official referenced in connection, but that you had not been given any notice. Correct. And your argument is that that is a procedural error? Absolutely, Your Honor. Yes, for the reasons set forth in the brief. And that would entitle you to a harmless error hearing, right? That would go back to the – that one, as opposed to the ignoring the response to the notice of removal, I agree that that argument is the harmless error aspect of things, yes. That that isn't up on the constitutional spectrum as simply ignoring the notice of removal. You aren't going to argue that you get the full benefit of a new runaround? Correct. On that one, it's a harmless error analysis. Good for you. You can apply to that, Your Honor. Frequently, people overreach a little bit in their argument. Try not to. Are you familiar with our Ward case? I mean, I found that one – I don't believe it was cited – Ward against the Postal Service. It's almost on all fours with your May 20 episode. No, and – It's – there are sites, Ward, in the brief for a different proposition. My recollection is, going through research for this, that that was one of the cases that came out because it was Postal Service and used a lot of the same facts. So I will reserve the remaining time for rebuttal unless there are additional questions. Yes, we will save you full rebuttal time, Mr. McLaughlin. Thank you very much. Good morning, Your Honors, and may it please the Court – Mr. Borah. This Court should affirm the Board's ruling for two reasons. First, substantial evidence, most notably the testimony of numerous agency witnesses that the administrative judge found credible, supports the Board's conclusion that it was more likely than not that Mr. Doe did, in fact, strike Mr. Good. What's the government's position on the mailbox rule? I always thought the rule was that it was the date of mailing unless some statute said otherwise or some specific notice said otherwise. Is that your understanding of the rule? I believe that's correct, Your Honor. I think the issue here is that the notice clearly said that the response had to be within 10 days. Exactly, mailed within 10 days. That's my question about the mailbox rule. It says reply within 10 days. The Internal Revenue Service says pay your taxes by the 15th, so you mail it by the 15th. That is correct, Your Honor. Well, if you look at your regulation, how is a person in Mr. Doe's position supposed to know that he's obligated to deliver his response before the end of the 10th day as opposed to mailing it? For example, if you were Mr. Doe and you were getting ready to make your response, how would you know based on your regulations that receipt was required? Well, the record reflects in this specific case, Your Honor, that Mr. Doe had an opportunity to actually inquire. He's supposed to inquire? Is that the idea? Well, at least Mr. Hickory, his union steward, was in communication with Mr. Burleson who reminded him, Mr. Burleson reminded Mr. Hickory that the 10-day clock was running. If there was any confusion at that point as to whether or not the response had to be received within 10 days or mailed within 10 days, there was certainly ample opportunity for Mr. Hickory to clarify that. Is it that strange for the Postal Service with tens of thousands of employees and so there's a non-clear regulation, everyone is obliged to ask someone, what does this mean as they get ready to respond? Your Honor, I'm certainly not suggesting as a general practice that's what employees have to do. But you're telling us that this is an absolutely fatal flaw on Mr. Doe's part? No, Your Honor. Even if the Postal Service should have considered the letter or considered it timely and as part of Mr. Doe's response, the failure to do so is still subject to the harmless error test. How do we know? How do we know that it wouldn't have gotten their attention? What exactly did Mr. Burleson say? Didn't he say something to the effect of, well, that might have made a difference? Why don't you point us to it in the record of words testimony so we know? Well, at page A330 of the record that says testimony, he states that the letter, quote, brought no additional information or facts beyond what was already there. The letter, which is in the record at A178, basically made two claims. One, it said that there were several inconsistencies in the witness statements upon which the agency relied in determining that Mr. Doe had struck Mr. Goode. But there was only one inconsistency it identified. It was a statement by Ms. Menard that Mr. Doe had kicked Mr. Goode in addition to punching him. There is nothing... But the letter we're talking about that was ignored by Mr. Burleson, if I'm not mistaken, the central content of that letter was, I want to let you know that Mr. Goode was a professional or semi-professional boxer. Well, there were two contentions. One, this statement about the errors, and two, that... That notion is, well, if I'd have hit him, you know, you'd... He would have known it. He would have known it. And I thought that there was, I'm trying to find it in my... I thought there was actual testimony that Mr. Burleson said, well, you know, I might have paid some attention to that fact. I think Mr. Doe's brief does make reference to that. I believe it's at page 127. I'm looking in the app. I'm sorry, appendix page 127. Let me find it for you, Your Honor. At page... I've got it. It's at app 128. 128, right. Okay. Here's the letter. It might uncover an error. It would be important to understand the significance of Doe as a boxer, right? Well, I did not take that into consideration. Boom. I didn't pay attention to that. Well, if you had, they were correct. They might not leave marks. Okay, right. But you don't know until you pursue the area of inquiry further, right? Yes. That's correct. And he states on line six, correct? So that doesn't... That make the content of the letter not... It's not harmless error to have ignored it. If someone says, well, now that you're telling me that this gentleman was a, you know, he didn't leave a real mark, yes, it could, but you won't know until you, you know, talk to people more about it. Again, he states that here, and then later in his testimony, he states that the letter added nothing to the facts that were already in front of him. And there's nothing in... That's inconsistent. It is inconsistent. It's inconsistent. Is harmless error a factor here if we're talking about a due process violation? I think to determine whether or not an error rises to the effect of a due process violation, the court has to consider whether or not it would have had any effect upon the proceeding. If it wouldn't, it can't rise to the level of a due process violation. Certainly that issue hasn't been ventilated at the board level. Well, in Mr. Doe's petition for review, he did raise this issue. Well, Mr. Doe was entitled in his position for review to raise this as a procedural error, and he did. And he got a ruling from the board, and essentially said, I'm sorry, the response was untimely. If it's untimely, it doesn't have to be considered. Well, but the board in its response to the petition for review also stated that Mr. Doe had not presented any evidence that the fact that he was trained as a professional boxer would have... Of course, because they didn't receive it, because it was untimely. Undoubtedly because of the argument of the government that it was untimely. There was no development of the underlying question, which is, as Mr. Burleson said, well, yeah, I would know more about this if there was an inquiry. But because there was no inquiry, there was no factual predicate that Mr. Doe could present either to the AJ or to the board. Well, there's certainly nothing to preclude Mr. Doe from presenting to the board arguments that because he was trained as a professional boxer... And do you know how often the board takes up these issues and reviews the AJ? They're saying all I have to do is present it, and all of a sudden all the due process issues will disappear, even though the board says it's untimely and we're not going to look at it. Is that what I hear you telling us? All I'm saying, Judge Newman, is that he could have presented the argument. He did not. Right. Other than asking Mr. Burleson on cross-examination if he considered it, he didn't present any affirmative evidence that, in fact, his training as a professional boxer would have certainly resulted in bruising or some sort of more tangible injury to Mr. Goode. Is your position that the notice with the 10-day period is unambiguous, or is your position that, well, perhaps there might be an ambiguity, but he had an opportunity to inquire? Well, our position, Your Honor, is that the letter is unambiguous and that it's within 10 days. The response needs to be received by the Postal Service. It's not received. Don't say received. You know, the appellate federal system requires that a notice of appeal be received, quite explicit, because it's an exception. That's correct. It says your representative may answer this proposal within 10 days. But even if it is ambiguous, again, Mr. Doe here clearly had an opportunity to inquire or to at least notify Mr. Burleson that he was going to submit a response. They actually scheduled a meeting to discuss the allegations in the notice that was supposed to take place on February 3rd. So you're placing the – now you're saying there is an ambiguity, but it was the obligation of Mr. Doe to come to find out the answer. If there was an ambiguity. How can you unblushingly tell us that this is not ambiguous? It says within 10 days, right? That's correct. You may respond within 10 days. And you may respond within 10 days in writing by mail because it says to Ricky Burleson with a postal address. That's correct. I mean, it's hard not to read that to say if you mail it within 10 days, you're okay. Well, certainly. That's what it says. That's not an unreasonable reading of the notice. But, again – Is this like interpreting a contract? Well, I think – Can we read this language that's quoted at page 28 of the brief and decide as a matter of law what it meant? Well, Your Honor, you can certainly decide that it is ambiguous. And if it is, under principles of contract interpretation, if there is a patent ambiguity in it, it's upon the contractor to raise that ambiguity prior to – Is there anything in the – is Mr. Doe a member of the union? I believe he is, Your Honor. Does his employment contract have anything in it about his rights of appeal of adverse actions? And usually a labor management agreement provides for that sort of thing. What I'm trying to find out is whether or not we are indeed in the embrace of a contractual concept here. I understand your question, Your Honor. I apologize. I'm not familiar with Mr. Doe's union contract. Can I ask you a question about the May 20 episode? Yes, Your Honor. Can I – just the shirt episode? Mm-hmm. In your brief, you blow that off at the last minute by saying that basically there was no harmful procedural error. Do I read you to be conceding that there's a violation of the Ward case here? Well, Your Honor – You cited Ward in your brief, you know, for some collateral proposition. Right. And Ward's on all fours with this case, isn't it? Well, I would disagree that it's on all fours. It's only three and three-quarters. Maybe – The same situation. You had a misconduct removal for a single incident. You had, you know, facts about whether the person did it. Then you had a Douglas factors. You had a penalty consideration and a penalty consideration in Ward. The presiding official took into account a previous conduct issue that had not been noticed. Right. The reason I say it's not on all fours is because in Ward – Don't you think you had an obligation to tell us in the brief that you knew that Ward was – applies to this situation? We held in Ward that it's procedural error in the Douglas setting to take into consideration in penalty a matter that had not been in the notice of removal. I'm quoting from the 1281, the page. Right. That's what happened here. Well, I apologize, Your Honor. And what you get for that is not a complete redo, but you get an opportunity to have a harmless error shown. Right. And it struck me when you end your brief by saying, well, there was no harmful procedural error here. You're actually conceding the violation of the Ward thing, but you're denying him a procedural error hearing. I apologize, Your Honor, and the board should have more clearly articulated – Oh, you're confessing error on that point. Well – And you can't decide whether – the answer to the harmful error hearing, can you? I certainly cannot. The D.J. gets to do that. That's correct. At the least, Mr. Doe is going to get a remand for harmless error hearing on the shirt incident. Yes, Your Honor. Is the yes nodding your head up and down this way or is it this way? Well, Your Honor, that's really your decision. Well, no, but aren't I right? I mean, I'm not going to do something that's wrong, but it doth irritate me a tad to have you know that the Ward case is out there and have you just blow right by it on the grounds that, well, if there was a remand for a harmless error hearing, he would lose. Again, the reason I said it's not on all fours with Ward is because in Ward, the deciding official and the Board recognized that he used outside ex parte communications about incidents not in the letter to enhance the penalty against Mr. Ward. Here, the deciding official clearly testified that his decision to remove Mr. Doe was based solely upon the single incident that was alleged in the notice of proposed removal. Why did he mention that he took the other thing into consideration in making his decision? Well, he simply stated that he knew who Mr. Doe was and he had some knowledge of his employment history and I think it would make it very difficult for agencies to conduct any sort of removal actions if they can't have any sort of background knowledge about employees when they're considering an adverse action against them. And this was not a case in which Mr. Burleson went out and spoke to people and gathered information that was adverse to Mr. Doe prior to making his decision. I see that my time has expired unless the Court has any further questions. Any more questions? No. Any more questions? Thank you.  Mr. McLaughlin? Thank you, Your Honors. Just briefly, on the Super Bowl Sunday question and the 10 days, looking at Appendix 178, which is the letter that was sent in response that was ignored by Postmaster Burleson, it says in the face of it, so the record evidence that we have, is that the union received the letter on January 29th. And so if you start from the 29th, most counting rules, you would start on the 30th. In other words, they start after the day of receipt, at least under the federal rules and what I'm used to. So you start January 30th, January 31st, you get to January 7th, which is the day the letter is dated, that's the Sunday. So even if they didn't put in the mail on that Sunday, but rather put in the mail on the Monday, the 8th, that would be the 10th day. And so we assert consistent with what we perceive to be, at worst, an ambiguous regulation and or letter that it was timely, Your Honor. The government hasn't made any argument at all that if we were going to treat the date of the letter as operative, that it was late. Correct. I mean, the government's view all along has been the date of the letter is irrelevant. Correct, it's receipt per government. If we were to construe, if we thought we could construe the language in Burleson's letter to your client, giving him the 10 days, as actually telling him he could respond by mailing, by writing, timely. And I've heard nothing from the government. I don't see there's no fight by the government as to whether the 7th, 8th, or whatever day. So I will step away from a fight that doesn't exist. That's all I have, unless there are further questions. Thank you very much, Your Honor. Thank you, Mr. McLaughlin. Mr. Barr, the case is taken under submission.